# EXHIBIT "A"

[Dkt. No. 35]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| UNITED STATES OF AMERICA ex rel. SHARON LAMPKIN,<br><br>Plaintiff/Relator,<br><br>v.<br><br>PIONEER EDUCATION, LLC; PIONEER EDUCATION MANAGER, INC.; JOLIE HEALTH & BEAUTY ACADEMY; and JOSEPH VISCONTI,<br><br>Defendants. | Civ. No. 16-1817 (RMB/KMW)<br><br>OPINION |

**APPEARANCES:**
MORGAN ROOKS, P.C.
By: Franklin J. Rooks, Jr., Esq.
525 Route 73 North, Suite 104
Marlton, New Jersey 08053
    Counsel for Plaintiff/Relator Sharon Lampkin

JARED JACOBSON LAW, LLC
By: Jared A. Jacobson, Esq.
144 N. Narbeth Avenue, Suite 502
Narbeth, Pennsylvania 19072
    Counsel for Plaintiff/Relator Sharon Lampkin

MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, P.C.
By: Richard L. Goldstein, Esq.
15000 Midatlantic Drive, Suite 200
P.O. Box 5429
Mount Laurel, New Jersey 08054
    Counsel for Defendants Pioneer Education, LLC, Pioneer
    Education Manager, Inc., Jolie Health & Beauty Academy, and
    Joseph Visconti

UNITED STATES ATTORNEY'S OFFICE
By: Anthony J. Labruna, Jr., Esq.
970 Broad Street, Suite 700
Newark, New Jersey 07102
    Counsel for Interested Party United States of America

**RENÉE MARIE BUMB**, UNITED STATES DISTRICT JUDGE:

Plaintiff/Relator Sharon Lampkin ("Relator") brings this <u>qui tam</u> action against Defendants Pioneer Education, LLC, Pioneer Education Manager, Inc., Jolie Health & Beauty Academy, and Joseph Visconti ("Defendants"), alleging violations of the False Claims Act, 31 U.S.C. § 3729-33 ("FCA") [Amended Complaint ("Am. Compl."), at ¶¶ 20, 24, 26].  In the Amended Complaint [Dkt. No. 33], Relator alleges that Defendants violated the FCA by falsifying student attendance records, falsifying the satisfactory academic progress ("SAP") of students, falsifying student eligibility, and illegally terminated her for voicing concerns about the alleged violations. (Am. Compl., at ¶¶ 20-28). Now, this matter comes before the Court upon Defendants' Motion to Dismiss the Amended Complaint [Dkt. No. 35].  For the reasons set forth below, Defendants' Motion to Dismiss will be **GRANTED** and the Amended Complaint will be **DISMISSED**.

I. **FACTUAL & PROCEDURAL BACKGROUND**

Relator's claims arise from her employment with Defendant Jolie Health and Beauty Academy (the "Academy") at its location in Northfield, New Jersey.  As alleged in the Amended Complaint, the Academy is a post-secondary educational institution offering training in occupations such as cosmetology and barbering, which is operated by Defendants Pioneer Education, LLC, Pioneer

Education Manager, Inc., and Joseph Visconti. [Am. Compl., at ¶¶ 30-31]. Relator was hired by the Academy on October 29, 2012 and was employed on a full-time basis a Lead Barber Instructor in the Academy's barbering program until she was terminated in October of 2015. [Id., at ¶¶ 32-35, 56].[1] Relator alleges that on numerous occasions during her last three months of employment, she raised concerns to Defendants' management team about attendance violations, student conduct code infractions and lack of satisfactory academic progress. [Id., at ¶ 48]. Ultimately, Defendant was terminated from her position on October 1, 2015, which she alleges was a direct result of, and in retaliation for, voicing her concerns about improper practices at the Academy. [Id., at ¶¶ 55-57].

Relator instituted this qui tam action on March 31, 2016. After an investigation into Relator's claims the United States filed a Notice of Election to Decline Intervention on July 29, 2019. [See Dkt. No. 4]. On November 4, 2019 the Court held a pre-motion conference to address the parties' respective positions on Defendants' anticipated motion to dismiss. At the pre-motion conference, the Court noted various deficiencies in Relator's initial complaint. Accordingly, the Court permitted

---

[1] The Court notes that Relator's Amended Complaint skips directly from paragraph 32 to paragraph 35, and contains no paragraphs numbered 33 or 34.

Relator fourteen days to submit an amended complaint, which Relator filed on November 19, 2019.[2] This matter now comes before the Court upon Defendants' Motion to Dismiss the Amended Complaint.

## II. LEGAL STANDARDS

### A. *Motion to Dismiss*

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 662. "[A]n unadorned, the defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550

---

[2] When Relator filed her Amended Complaint, she removed Premier Education Group, LLC as a defendant, as that entity had been erroneously named in the suit. [Am. Compl., at ¶¶ 1-2].

U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

When reviewing a plaintiff's complaint on a motion to dismiss, the district court "must accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n.1 (3d Cir. 2012). When undertaking this review, courts are limited to the allegations found in the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents that form the basis of a claim. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

### B. *The False Claims Act*

Under the FCA, it is unlawful to knowingly submit a fraudulent claim to the federal government.[3] Bristol-Myers Squibb Co., 332 F. Supp. 3d at 938 (citing U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P., 769 F.3d 837, 840 (3d. Cir 2014)). The FCA contains includes a qui tam provision permitting private

---

[3] The FCA imposes liability on "any Person who (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;" or "(B) knowingly makes uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."

parties, known as relators, to bring suit against anyone who submitted a false claim to the government. Id. at 938-39 (citing Schumann, 769 F.3d at 840). A violation of the FCA has four elements: (1) falsity, (2) causation, (3) knowledge, and (4) materiality. U.S. ex rel. Petratos v. Genentech Inc., 855 F.3d 481, 487 (3d. Cir. 2017).

There are two primary categories of false claims that can satisfy the falsity requirement: (1) factually false claims and (2) legally false claims. Bristol-Myers Squibb Co., 332 F. Supp. at 939.[4] "A claim is factually false when the claimant misrepresents what goods or services that it provided to the Government and a claim is legally false when the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment." U.S. ex rel. Wilkins v. United Health Grp. Inc., 659 F.3d 295, 305 (3d. Cir 2011).

Legally false claims are subcategorized into two theories of liability: (1) express false certification and (2) implied false certification. U.S. v. Kindred Healthcare Inc., 2020 U.S. Dist. LEXIS 115998, at *17 (E.D. Pa. June 29, 2020). A defendant

---

[4] The Court notes that "federal courts have recognized a narrow, third category of false claims obtained by fraud-in-the inducement." Bristol-Myers Squibb Co., 332 F. Supp. at 939 (internal quotation marks omitted). This variant of a false claim, however, is not relevant to this case and need not be examined by the Court.

is liable under the express false certification theory when they falsely certify that they are in compliance with a material statute, regulation, or contractual provision. Bristol-Myers Squibb Co., 332 F. Supp. at 939. "By contrast, implied false certification liability attaches when a claimant 'makes specific representations about the goods or services provided' and the claimant's 'failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths.'" United States v. Eastwick Coll., 657 F. App'x 89, 93-94 (3d Cir. 2016)(quoting Universal Health Servs. v. U.S. ex rel. Escobar, 136 S. Ct. 1989, 2001 (2016)).

Because FCA claims allege fraud, they are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). See Foglia v. Renal Ventures Mgmt., LLC, 754 F.3d 153, 155-156 (3d. Cir. 2014)). In order for a relator to satisfy the standards of Rule 9(b) for purposes of FCA claims, the relator "must provide 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.' Describing a mere opportunity for fraud will not suffice. Sufficient facts to establish 'a plausible ground for relief' must be alleged." Id. at 157-158 (citing Grubbs v. Kanneganti, 565 F.3d 180, 190 (5th

Cir. 2009) and Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009)).

### III. DISCUSSION

Among Defendants' arguments for dismissal are that Relator (1) fails to allege materiality with sufficient plausibility and particularity; (2) fails to adequately state a claim for retaliatory discharge; and (3) does not attribute any specific wrongdoing to Defendant Visconti. On each of these points, the Court agrees with Defendants.[5]

#### A. *Materiality (Counts I, II, III)*

Defendants argue that Relator's allegations appear premised upon an implied false certification theory of liability, but fail to conform with the materiality standard proscribed in Escobar. [MTD, at 11-12]. Indeed, an FCA claim that asserts a "misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be legally actionable." Escobar, 136 S.Ct. at 1996. "In other words, all

---

[5] Defendants also argue that Count III (falsification of student eligibility) should be dismissed because, as a matter of law, the Academy cannot discriminate against students based on disability or national origin. The Court shares Defendants' skepticism about the viability of this claim. However, reaching this issue would likely force the Court to improperly examine issues of fact regarding the nature and severity of the students' alleged disabilities and English language abilities. Regardless, as the Court finds that dismissal is warranted on other grounds, the Court need not resolve this argument herein.

FCA claims of legal falsity must also meet the FCA's materiality standard." U.S. ex rel. Simpson v. Bayer Corp., 376 F.Supp.3d 392, 409 (D.N.J. Apr. 23, 2019).  In response, Relator argues that the claims laid out in her pleading can be advanced under both factually false and legally false theories of liability and that the Escobar materiality standard need not apply to factually false claims. [See Relator's Brief in Opposition ("Opp. Br.")[Dkt. No. 36], at 9-10].

The Court agrees with Defendants that Relator's Amended Complaint appears to proceed under an implied false certification theory; and an implied false certification theory alone.[6]  As previously stated, a "claim is factually false when the claimant misrepresents what goods or services that it provided to the Government." Wilkins, 659 F.3d at 305.  Despite Relator's arguments to the contrary, the Court cannot discern any allegation in the Amended Complaint that Defendants directly misrepresented a good or service that they provided to the government.  For example, Relator does not allege that Defendants were not providing cosmetology or barber programs. Rather, Relator appears to contend that the submission of false certifications amounted to "misleading half-truths," because

---

[6] As such, this Court need not resolve whether Escobar's materiality standard applies to allegations of factual falsity.

many enrolled students were not successfully completing their programs.

As best as this Court can extrapolate from the Amended Complaint, which is hardly a model of clarity and specificity, Counts I through III are based on the following theory:

(1) Defendants received funding under Title IV of the Higher Education Act of 1965 (the "HEA);

(2) each institution receiving Title IV funding must enter into a Program Participation Agreement ("PPA");

(3) the PPA requires such institutions to conform to the requirements of an accrediting agency, which for the Academy was the National Accrediting Commission of Career Arts and Sciences ("NACCAS");

(4) the NACCAS requires that "[t]he institution complies with applicable, federal (including Title IV Federal Financial Aid), state, and local statutes and regulations governing the operations of the institution including the NACCAS Rules of Practice and Procedure"; and

(5) therefore, violations of a relevant state, local, or federal statute or regulation would constitute a violation of the FCA due to a failure to conform with the PPA.

[Am. Compl., at ¶¶ 36-42, 76-87, 96-98]

Relator argues that Defendants' alleged violations of the PPA have a "presumption of materiality" because they violate Title IV regulations that are express conditions of payment. (RRB, 2). Relator argues that "[t]o be eligible for Title IV funding, an educational institution 'shall' enter into a Program Participation Agreement that '<u>shall condition</u> the initial and continuing eligibility of an institution to participate in a program <u>upon compliance</u> with' certain requirements, including that the 'institution will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds.' 20 U.S.C. § 1094(a) (emphasis added)." [Opp. Br., at 2]. Stated simply, Relator's argument misses the mark.

When "a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements, those omissions can be a basis for [FCA] liability." <u>Escobar</u>, 136 S.Ct. at 1999. In order to be legally actionable, however, a nondisclosure must be material. <u>Id.</u> at 2001. Indeed, "not every undisclosed violation of an express condition of payment automatically triggers liability. Whether a provision is labeled a condition of payment is relevant to but not dispositive of the materiality inquiry." <u>Id.</u>

As set forth in <u>Escobar</u>, a misrepresentation is not material solely because compliance has been deemed a condition

of payment. Escobar, 136 S.Ct. at 2002. The FCA's materiality standard is "rigorous" and "demanding[,]" and the statute is not meant to be an "all-purpose antifraud statute… or a vehicle for punishing garden-variety breaches of contract or regulatory violations." Id., at 2002-03. Under the FCA, a misrepresentation is material if it has "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4)(2009). Materiality "look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." Escobar, 136 S. Ct. at 2002 (citing 26 R. Lord, Williston on Contracts §69:12, p.549 (4th ed. 2003) (Williston)).

Relator's claims fail under Escobar's materiality standard because they are devoid of any substantive allegation to support a finding of materiality. To that end, the Amended Complaint does not specify whether the DOE would have ceased payment of Title IV funds if it learned about any, or all, of the alleged falsifications of student records (Count I), falsifications of SAP (Count II), and enrollment of ineligible students (Count III). Although Relator alleges that false statements "caused the Department of Education to pay various claims under Title IV HEA Programs that it would not have paid but for Defendants' fraud," [Am. Compl., at ¶ 117], the Amended Complaint lacks any allegations in support of this conclusory declaration of

materiality.  Furthermore, Relator's argument that Defendant's alleged violations are entitled to a "presumption of materiality" is not supported by a citation to any caselaw, and in fact is in stark contrast to the Supreme Court's controlling opinion on precisely this issue.[7]

As recognized in Escobar, the failure to plead materiality "was a proper basis for a motion to dismiss." Bristol-Myers Squibb Co., 332 F. Supp. at 946. Accordingly, the Court will dismiss Counts I, II and III.[8]

---

[7] Relator's reliance on Urquilla-Diaz v. Kaplan Univ., 780 F.3d 1039, 1054 (11th Cir. 2015), to support the notion that "[m]aking false statements to an accreditation agency could lead to a FCA violation because whether a school is accredited is material to the government's decision to disburse Title IV funds to the school (or its students)" is misplaced and unpersuasive. Notably, Urquilla-Diaz is an out-of-Circuit case that was decided before Escobar, and, therefore, did not apply the Escobar Court's heightened standard for materiality on implied false certification FCA claims.

[8] Defendants also contends that that Counts I, II, and III are deficient as redundant "reverse false claims," because they allege FCA violations for both misrepresentations/omissions and for failing to return overpayments.  As the Court has already found that dismissal is warranted, the Court need not discuss this issue at any length.  Stated succinctly, however, the Court agrees with Defendants that Relator cannot seek relief under both theories simultaneously.  Although Relator may be able to pursue these claims in the alternative, they are impermissibly alleged concurrently in the Amended Complaint.  Thus, to the extent Relator seeks amendment, this deficiency must be corrected.

### B.     *Retaliatory Discharge (Count IV)*

In Count IV, Relator claims that she was terminated from her job in retaliation for raising concerns about unethical practices at the Academy.  To state a claim under 31 U.S.C. § 3730(h)(1), a relator must demonstrate that she (1) engaged in protected conduct, and (2) was terminated (or otherwise discriminated against) because of engagement in the protected conduct. See Hutchins v. Wilentz, Goldman & Spitzer, 253 F.3d 176, 186 (3d Cir. 2001)(emphasis added).  Upon review, the Court will dismiss Count IV because Plaintiff fails to adequately allege either element of retaliatory discharge.

Relator's Amended Complaint is totally devoid of any allegations demonstrating that her termination was causally related to any engagement in protected conduct.  In this case, Relator contends that she was terminated within three months of raising concerns about student eligibility, SAP, and attendance. [Am. Compl., at ¶¶ 191-199]. However, Relator does not even allege (in either a factual or conclusory manner) that her employer had any awareness that her concerns had anything to do with, or raised the possibility of, a contemplated FCA suit, which are predicate requirements to establish protected activity.

Furthermore, Relator fails to sufficiently plead that she was terminated because of her participation in protected

activity. Relator simply states that she raised concerns and was terminated three months later. However, Relator never suggests a clear connection. On the contrary, Relator seemingly admits that her termination may have been linked to a complaint lodged by one of her students that resulted in a disciplinary action by the Academy. After learning that she had been disciplined, Relator admits that she confronted the student again about the circumstances that led to his complaint against her. As such, it appears that Relator's own allegations suggest an alternative reason for her termination. Because Relator fails to adequately allege either element necessary for a retaliatory discharge claim, Count IV must be dismissed.

### C.  *Liability of Joseph Visconti*

Next, Defendants argue that all claims should be dismissed against Joseph Visconti, the President and CEO of the Academy. At the pre-motion conference on November 4, 2019, the Court informed Relator that the initial complaint was insufficient as to Visconti, as it simply identified his role as President and CEO of Jolie Health and Beauty Academy and failed to attribute any wrongdoing to him. In an apparent effort to remedy this deficiency, Relator added three references to Visconti in the Amended Complaint:

> 112. Upon information and belief, Defendant Visconti is responsible for signing and submitting PPAs on behalf of Defendant Jolie Health and Beauty Academy.
>
> 135. Defendant Visconti, as the chief executive officer, is, upon information and belief, responsible for the representations made in the PPA executed with the Department of Education.
>
> 136. Defendant Visconti is ultimately responsible for ensuring compliance with the material terms and conditions of the PPA.

[Am. Compl., at ¶¶ 112, 135, 136].

The Court notes that nowhere in these allegations does Relator allege an actual FCA violation (in relation to Counts I, II, and III) on the part of Visconti. Further, Relator openly admits that she "does not have any authority that would expressly include Defendant Visconti as a defendant under Count IV." [Opp. Br., at 25, n.5]. As such, the Court finds it apparent that Relator cannot, in good faith, allege liability on the part of Defendant Visconti and will dismiss the claims against him with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be **GRANTED** and Relator's Amended Complaint will be **DISMISSED**. Although Relator's claims against Defendant Visconti will be **DISMISSED WITH PREJDUICE**, the Court will permit Relator an opportunity to file a Motion for Leave to Amend, in which she explains why the deficiencies outlined herein could be cured

through amendment, in relation to the claims against the other Defendants.  An appropriate Order shall issue on this date.

DATED: July 31, 2020

>                    s/Renée Marie Bumb
>                    RENÉE MARIE BUMB
>                    UNITED STATES DISTRICT JUDGE

[Dkt. No. 35]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. SHARON LAMPKIN,<br><br>Plaintiff/Relator,<br><br>v.<br><br>PIONEER EDUCATION, LLC; PIONEER EDUCATION MANAGER, INC.; JOLIE HEALTH & BEAUTY ACADEMY; and JOSEPH VISCONTI,<br><br>Defendants. | Civ. No. 16-1817 (RMB/KMW)<br><br>**ORDER** |

**THIS MATTER** comes before the Court upon a Motion to Dismiss [Dkt. No. 35], filed by Defendants Pioneer Education, LLC, Pioneer Education Manager, Inc., Jolie Health & Beauty Academy, and Joseph Visconti ("Defendants"), seeking dismissal of Plaintiff/Relator Sharon Lampkin's Amended Complaint [Dkt. No. 33].

For the reasons set forth in the accompanying Opinion of the same date,

**IT IS**, on this **31st** day of **July 2020**, hereby

**ORDERED** that Defendants' Motion to Dismiss the Amended Complaint [Dkt. No. 35] is **GRANTED**; and it is further

**ORDERED** that Plaintiff/Relator's Amended Complaint [Dkt. No. 33] is **DISMISSED** and that the dismissal shall be deemed **WITH**

**PREJUDICE** as to the claims asserted against Defendant Visconti; and it is further

**ORDERED** that Plaintiff/Relator shall be permitted thirty (30) days from the date of this Order to file a Motion for Leave to Amend, in which Plaintiff/Relator must explain how the deficiencies outlined in the corresponding Opinion would be cured through amendment. If Plaintiff/Relator does not file a Motion for Leave to Amend within thirty (30) days, the Court will enter an Order dismissing this matter with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall **ADMINISTRATIVELY CLOSE** this case, subject to reinstatement to the Court's active docket upon the granting of a Motion for Leave to Amend.

                                        s/Renée Marie Bumb
                                        RENÉE MARIE BUMB
                                        UNITED STATES DISTRICT JUDGE